UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LLEWELLYN JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3: 10-CV-01764-B |
| | § | |
| VERIZON COMMUNICATIONS INC. & | § | |
| VERIZON NORTH, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court are Defendant's Motion to Dismiss (doc. 24), filed November 17, 2010, and Plaintiff's Response (doc. 29) containing a Motion for Jurisdictional Discovery, filed December 8, 2010. The Court **GRANTS** Defendant's Motion to Dismiss for lack of personal jurisdiction and **DENIES** Plaintiff's Motion for Jurisdictional Discovery for the reasons discussed below.

## I.

## BACKGROUND

This is an employment discrimination suit arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Texas Commission on Human Rights Act. (Pl.'s 2nd Am. Compl. 1). Plaintiff Llewellyn Johnson ("Johnson") alleges her employment was terminated by Defendants because of discrimination based on race and age. (*Id.* at 3). Defendant Verizon North, Inc. ("Verizon North") is a Wisconsin corporation with its headquarters in Irving, Texas. (*Id.* at 2). Defendant Verizon Communications Inc. ("VCI") is a Delaware corporation with its headquarters in New York, New York. (*Id.*). VCI is the parent company of many subsidiaries

1

including Verizon North. (Pl.'s Resp. 11). VCI filed this Motion to Dismiss on November 17, 2010. On December 8, 2010, Johnson filed her Response to the Motion and VCI filed its Reply on January 5, 2011. The Motion being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067-68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). To meet the federal constitutional test of due process, two elements must be satisfied:

(1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068.

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). Specific jurisdiction exists when the cause of action arises from nonresident defendant's contacts with the forum state. *Id.* (citation omitted). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). In either context, the Court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

### III.
### ANALYSIS

A.  *Specific Jurisdiction*

In its Motion to Dismiss, VCI argues that the alleged causes of action have no relation to VCI because VCI has no employees in Texas. (Def.'s Br. Mot. Dismiss 4). Johnson argues that the Court has specific jurisdiction over VCI because she was jointly employed by VCI and Verizon North. (Pl.'s Resp. to Def.'s Mot. Dismiss 8-12). Thus, the Court will determine if VCI is subject to specific jurisdiction by deciding whether Johnson was employed by VCI.

The Fifth Circuit uses the four-factor *Trevino* test to determine whether a parent corporation

is considered the employer of a subsidiary's employee. *Torres v. Liberto Mfg. Co.*, No. 3-01-CV-1888-H, 2002 WL 2014426, *4 (N.D. Tex. Aug. 30, 2002) (citing *Trevino v. Celanse Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The four factors considered are: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Trevino*, 701 F.2d at 404. In employment discrimination cases, courts have "almost exclusively" focused on the second factor, looking to which entity made the final decision to terminate the plaintiff. *Torres,* 2002 WL 2014426 at *4 quoting *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 617 (5th Cir. 1999). The remaining factors are considered to the extent they resolve the issue of which entity made the final decision regarding employment matters of the person claiming discrimination. *Bass v. Technip USA Corp.*, No. Civ.A. H-05-0652, 2005 WL 1185626, at * 3 (S.D. Tex. May 6, 2005) (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997)). There is a strong presumption that a subsidiary's employee is not the employee of the parent company. *Lusk*, 129 F.3d at 778. To overcome this presumption, the plaintiff must present evidence establishing a "significant departure from the ordinary relationship between a parent and its subsidiary. . .". *Id*.

Johnson offers two arguments that VCI controls the labor relations of Verizon North and played a role in her termination. First, Johnson argues that she was terminated because Verizon North decided to eliminate jobs in anticipation of VCI's decision to transfer of Verizon North to a new company. (Pl.'s Br. Resp. Def's. Mot. Dismiss 1). This chain of events alleged by Johnson is too attenuated to support an inference that VCI controls labor relations at Verizon North; Johnson fails to specify how VCI was involved in the final personnel decision to terminate her employment. Johnson argues that VCI has a centralized human resources program that decides all matters relating

4

to human resources at its subsidiaries. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 9). However, VCI's Code of Business Conduct contains a disclaimer explicitly stating that subsidiaries control the terms and conditions of their employees. (App. to Pl.'s Resp. 54).

In light of this provision, the Court finds that Johnson has presented insufficient evidence to overcome the strong presumption that VCI is not her employer. Therefore, the Court cannot exercise specific jurisdiction over VCI.

B.      *General Jurisdiction*

To establish general jurisdiction over VCI, Johnson must make a *prima facie* showing that VCI's contacts with Texas are continuous, systematic, and substantial. *See Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted).

Johnson alleges that VCI has enough contacts with the state of Texas for this Court to exercise general jurisdiction over VCI. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 12). Specifically, Johnson alleges that VCI sent correspondence to her in Texas. (*Id.*). Johnson also alleges that VCI's website claims to have a "nationwide presence in wireline and wireless services." (App. to Pl.'s Resp. 197). Finally, Johnson argues that general jurisdiction exists because the "Corporate History" portion of VCI's website specifically mentions internet services provided in Keller, Texas. (App. to Pl.'s Resp. at 198). In response, VCI argues that it does not manufacture goods or provide services in Texas. (Def.'s Br. Mot. Dismiss 5). VCI further argues that it does not have a place of business in Texas, is not licensed to practice business in Texas, and has no assets, employees, or registered agents in Texas. (*Id.*).

Merely doing business in or with the forum state is insufficient to establish general jurisdiction over a foreign corporation. *Johnston v. Mulitdata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th

5

Cir. 2008). The business presence requirement of general jurisdiction is a difficult standard to satisfy. The Fifth Circuit held there was no general jurisdiction in *Access Telecom, Inc. v. MCI Telecommunications Corp.*, where the defendant had more favorable contacts with the forum state than Johnson has asserted here. *Access*, 197 F.3d 694, 717 (5th Cir. 1995)(finding no general jurisdiction although defendant corporation had numerous contacts with Texas, including leasing telephone lines and real property within Texas, storing telephone poles in Texas, and receiving millions of dollars in revenue from Texas residents). Johnson fails to demonstrate that VCI has a business presence in Texas other than VCI's ownership of a subsidiary in Texas, and VCI's proclaimed national presence on its website. This falls short of meeting the stringent general jurisdiction standard. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990). Since VCI does not have a business presence in Texas that is continuous, systematic, and substantial, the Court finds that there is no general jurisdiction over VCI.

C.   *Alter Ego*

In the alternative, Johnson argues that the Court has personal jurisdiction over VCI based on an alter ego theory. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 7-8, 10-12). Under the alter ego theory, a court may exercise personal jurisdiction over a parent company based on a subsidiary's contacts with the forum state when the parent "exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities.'" *Franklin v. Burlington N. & Santa Fe R.R. Co.*, No. 4:10-CV-618-Y, 2010 WL 4877279, at *3 (N.D. Tex. Dec. 1, 2010)(citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)). "[T]o overcome the presumption of institutional independence between related companies, the plaintiff must prove 'domination and control' by 'clear evidence.'" *Id.* (quoting *Freudensprung v. Offshore Technical Servs.*,

6

379 F.3d 237, 246 (5th Cir. 2004)). Courts look at several factors when determining whether the plaintiff has overcome the presumption of corporate separateness, including "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Freudensprung*, 379 F.3d at 346.

Johnson argues that VCI and Verizon North should not be considered separate and distinct entities because VCI owns Verizon North's parent corporation, and because VCI and Verizon North filed joint federal tax returns. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 11). Johnson also argues that VCI provided her with the Business Code of Conduct that Verizon North employees were bound by and that was used as a standard for their yearly reviews. (Pl.'s Br. Resp. Def.'s Mot. Dismiss at 10, 12). Johnson further claims that VCI provided her with an employee identification card, a corporate credit card, employee benefits, and stock options. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 8-11). Johnson provides a copy of a reporting hierarchy that can trace Johnson's supervisors all they way to the CEO of VCI. (App. to Pl.'s Resp. Def.'s Mot. Dismiss 12). Additionally, Johnson argues that VCI website presents itself as a unified enterprise with its subsidiaries. (App. to Pl.'s Resp. Def.'s Mot. Dismiss 197-98). Finally, Johnson claims that VCI dominates and controls Verizon North because the dissolution of Verizon North resulted from VCI's announcement of an agreement with another corporation. (Pl.'s Br. Resp. Def.'s Mot. Dismiss 11).

In response, VCI argues that many of Johnson's claims are typical features of a parent-subsidiary relationship. (Def.'s Br. Reply Mot. Dismiss 4-5). Specifically, VCI contends that joint tax returns, a Code of Business Conduct issued by a parent corporation, a reporting hierarchy, and

7

offering stock options to subsidiary employees are common features of parent-subsidiary relationships. (Def.'s Br. Reply Mot. Dismiss 3-6). VCI also maintains that announcing the sale of a subsidiary is a natural part of the parent-subsidiary relationship. (Def.'s Br. Reply Mot. Dismiss 5).

To determine whether VCI is the alter ego of Verizon North, the Court must determine whether VCI has acted in a way that goes beyond a normal parent-subsidiary relationship. The Court notes that the Fifth Circuit has considered similar sets of facts to those alleged by Johnson to be insufficient to establish alter ego jurisdiction. *See generally Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (finding no alter ego where parent company wholly owned the subsidiary, the subsidiary funneled its revenue into centralized bank accounts, and the parent and subsidiary filed a joint federal tax return, because the parent company observed corporate formalities and did not interfere with subsidiary's personnel decisions).

The Court finds that the facts Johnson cites as evidence of dominance and control do not extend beyond a normal parent-subsidiary relationship. *See Torres v. Liberto Mfg. Co.*, No. 3-01-CV-1888-H, 2002 WL 2014426, at *5 (N.D. Tex. Aug. 30, 2002) (finding a typical parent-subsidiary relationship where the parent company provided an employee handbook and employee benefits to its subsidiary). Because the Business Code of Conduct stipulates that subsidiaries make personnel decisions, the Court finds that VCI does not exercise complete control over Verizon North's general policies or daily activities. Johnson fails to offer evidence overcoming the presumption of institutional independence, and the Court finds that VCI is not subject to jurisdiction under the alter ego theory.

D.   *Jurisdictional Discovery*

Johnson argues that if the Court finds it does not have jurisdiction over VCI, she should be

8

allowed to take jurisdictional discovery. (Pl.'s Resp. 14). A court may grant jurisdictional discovery when the plaintiff has established a "preliminary showing of jurisdiction" over the nonresident parent company. *EsNtion Records Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027-L, 2008 WL 2415977, at *6 (N.D. Tex. June 16, 2008)(citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Since Johnson has not shown a preliminary finding of jurisdiction, the Court **DENIES** Johnson's request for jurisdictional discovery.

### III.

### CONCLUSION

For the reasons stated above, VCI's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** and Johnson's request for jurisdictional discovery is **DENIED**. The Court **ORDERS** that all claims against Verizon Communications Inc. be **DISMISSED**. The claims against Verizon North, Inc. remain for resolution and are unaffected by this Order.

**SO ORDERED.**

DATED April 7, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE